**Electronically Filed
Intermediate Court of Appeals
CAAP-10-0000019
12-NOV-2013
09:13 AM**

NO. CAAP-10-0000019

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


NO. CAAP-10-0000019

DOUGLAS H. DRAKE, Plaintiff-Appellee/Cross-Appellee,
v.
EARL K. GASPAR AND DIANA DANMEYER-GASPAR,
Defendants-Appellants/Cross-Appellees,
and
UNITED STATES OF AMERICA (DEPARTMENT OF THE TREASURY,
INTERNAL REVENUE SERVICE), MAKALEI ESTATES COMMUNITY ASSOCIATION,
DIANE ELLIS, Defendants-Appellees/Cross-Appellees,
and
FRANKLIN PAUL EMBERNANTE, LEILANI PAULINE EMBERNANTE,
Defendants-Appellees/Cross-Appellants

AND

NO. CAAP-10-0000168

DOUGLAS H. DRAKE, Plaintiff-Appellee,
v.
FRANKLIN PAUL EMBERNANTE, individually and as Trustee of the
Franklin Paul Embernante Trust dated February 27, 2006 and
LEILANI PAULINE EMBERNANTE, individually and as Trustee of the
Leilani Pauline Embernante Trust dated February 27, 2006,
Defendants-Appellants
and
UNITED STATES OF AMERICA (DEPARTMENT OF THE TREASURY,
INTERNAL REVENUE SERVICE), EARL K. GASPAR, AND DIANA
DANMEYER-GASPAR, MAKALEI ESTATES COMMUNITY ASSOCIATION;
DIANE ELLIS, Defendants-Appellees


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 10-1-0067K)

MEMORANDUM OPINION
(By: Nakamura, C.J., Reifurth and Ginoza, JJ.)

This case represents the consolidation of two separately-brought appeals. In appellate case number CAAP-10-0000019, Defendants-Appellants Earl K. Gaspar and Diana Danmeyer-Gaspar ("Gaspars") appealed from the August 17, 2010 Order Granting Plaintiff's Motion for Summary Judgment ("Order"), filed in the Circuit Court of the Third Circuit ("Circuit Court").[1] In appellate case number CAAP-10-0000168, Defendants-Appellants Franklin P. Embernate and Leilani P. Embernate ("Embernates"), who are also parties in their trustee capacities, see infra, appealed from the October 20, 2010 Findings of Fact, Conclusions of Law and Interlocutory Judgment of Foreclosure and Judgment for Specific Performance on Complaint Filed February 22, 2010 ("Judgment"), filed in the Circuit Court.[2]

On January 27, 2011, this court, upon motion by Plaintiff-Appellee Douglas H. Drake ("Drake"), consolidated both cases under appellate case number CAAP-10-0000019, and directed the Embernates to designate themselves as cross-appellants and to file their opening brief as cross-appellants under that case number. On June 20, 2011, this court dismissed the Gaspars' appeal from the Order for want of prosecution, while noting that the Embernates' now designated cross-appeal from the Judgment remained pending.

On cross-appeal, the Embernates contend that the Circuit Court erred (1) "in adjudicating [Drake's] right to a deficiency judgment against [the Embernates, individually] when the trial court entered [its Judgment]," and (2) "in the inclusion of [Finding of Fact paragraph 15]." We vacate that part of the Judgment declaring the Embernates liable for a deficiency judgment and remand to the Circuit Court for

---

[1]	The Honorable Ronald Ibarra presided.

[2]	The Judgment, in part, implemented the Order. It is of no significance here that the Gaspars appealed from the Order while the Embernates appealed from the Judgment. See Haw. R. App. P. 4(a)(2) (permitting notice of appeal to be filed post-order but pre-judgment and in such instance deeming the notice to be filed as of the time the judgment becomes final for purposes of appeal).

2

proceedings consistent with this opinion.

I.    BACKGROUND

A.    The Parties' Arrangement

The Embernates, in their capacities as trustees of their respective individual trusts ("Embernates-Trustees"), and the Gaspars sought to obtain financing to construct a home for the purpose of selling it for a profit.  Drake provided the financing via a promissory note in the amount of $500,000 ("Mortgage Note"), backed by a mortgage ("Mortgage") issued by the Embernates-Trustees and the Gaspars ("Mortgagors"), on property located at 72-1147 Hoʻopai Way, Kailua-Kona, HI 96740 (the "Property").[3/]  The Mortgage Note, signed by the Mortgagors, specified that any borrower-trustee personally guaranteed any obligations arising under the note.

The arrangement did not go as planned.  The Property was developed and apparently sale-ready but the Embernates could not find a buyer.  The Mortgagors defaulted on the Mortgage, and Drake sought to foreclose.

B.    The Complaint

On February 22, 2010, Drake filed his complaint to foreclose on the Mortgage ("Complaint") against, among others, the Gaspars, the Embernates, and the Embernates-Trustees.  He alleged that the Mortgagors had breached the Mortgage and Mortgage Note, that he was thereby entitled to foreclosure and an order of sale of the Property, and that he should be awarded all sums due under the Mortgage.  As to the foreclosure, Drake prayed for the following relief:[4/]

> 1.    That process of this Court issue commanding the Defendants above named to appear and answer the allegations

[3/]    Originally, it was Drake in his capacity as Trustee of his personal trust who loaned the money; he subsequently assigned the mortgage to himself personally.

[4/]    Per Drake's definition of Defendant-Mortgagors, references to "Defendants" that follow are understood to encompass all defendants in the case while references to "Defendant Mortgagors" encompass only the Mortgagors, i.e., the Gaspars and Embernates-Trustees, but not the Embernates individually.

of this complaint and to perform and abide by all such orders, directions and decrees as may be herein made and entered.

2. That upon hearing, there be ascertained the total amount due to Plaintiff at the time of judgment upon the Note and Mortgage . . . and that this Court determine and enter its judgment.

3. That there is due and owing to Plaintiff by virtue of the terms of said Note and Mortgage and all of the proofs adduced, a certain sum of money in the amount of $837,387.16, . . . and that said sum of money [plus interest and other costs and fees] be declared to be a lien senior to the liens, if any, of the defendants herein (except [the owners' association and Diane Ellis, a defendant-lienholder of a senior mortgage]), upon the Property[.]

. . . .

5. That this Court appoint a Commissioner to [effect a foreclosure sale].

6. That [proceeds from such sale be properly applied by the Commissioner].

. . . .

**8. That if the proceeds of the sale shall be insufficient to pay the aforesaid sums to the Plaintiff and it shall appear that a deficiency exists, that judgment then be entered for such deficiency against Defendant Mortgagors, jointly and severally, and that Plaintiff shall have execution therefore.**

9. That upon the foreclosure sale prayed for herein, Defendants named herein (other than [the owners' association] and Diane Ellis) and all persons or entities claiming by, through, or under said Defendants be forever barred and foreclosed . . . from any and all right, title and interest in and to the Property.

10. That Plaintiff have judgment against Defendant Mortgagors, jointly and severally, in an amount equal to the principal sum due under the Note, together with interest, advances, costs and attorney's fees, . . . and that Plaintiff have execution therefore.

11. That Plaintiffs have such other and further relief as may be just and to the Court seem proper.

(Emphasis added.)[5]/


C.   Motion for Preliminary Injunction

In addition to filing his Complaint, Drake moved for a preliminary injunction, seeking in part to gain possession of the Property and enjoin the Gaspars and Embernates from interfering

---

[5]/   Drake attached a copy of the Mortgage, but not the Mortgage Note, as an exhibit to the Complaint.

with it. In their joint filing in opposition, the Gaspars and Embernates-Trustees alleged that they had already tendered full payment to Drake. At the hearings on the motion, the legitimacy of the payment instrument—a purported money order drawn on the United States Treasury—was called into question.[6] The Circuit Court granted Drake's motion.

D. Motion for Summary Judgment/Amended Answers

On June 3, 2010, Drake moved for summary judgment. He contended that the "[Gaspars and Embernates-Trustees] entered into a construction mortgage securing a promissory note, personally guaranteed by the Embernates[,]" citing to the

---

[6] While the issue of the money order is not germane on appeal, it took center stage in the proceedings below. The Circuit Court's concern, suggested in the March 17, 2010 Order Granting Motion for Preliminary Injunction, is revealing:

CONCLUSIONS OF LAW

. . . .

2. Plaintiff has made a showing of the likelihood that he may prevail on the merits regarding the allegations against Defendants Gaspar and Embernante [sic] owed [sic] a debt to him and failed to repay it.

3. Plaintiff has demonstrated irreparable harm as Defendants Gaspar and Embernante [sic] have tendered documents purporting to be payment of that debt, which Plaintiff believes are "fictitious" documents; and Defendants have presented to Plaintiff the Internal Revenue Service's form 1099-A indicating that Plaintiff has received such payment from Defendant.

4. Plaintiff has argued that the scenario in this case is substantially similar if not similar [sic] to that in U.S. v. Anderson, 353 F.3d 490 (6th Cir. 2003) (upholding conviction for falsely filing tax form indicating money had been paid to various people in excess of $900,000).

5. A violation of 26 U.S.C. § 7206(1) *Fraud and False Statements* is complete when a taxpayer files a return which he does not believe to be true and correct as to every material matter. [citation omitted]

6. Defendants presented Plaintiff with a 1099-A form prior to verifying if Plaintiff had taken steps to redeem payment from the documents presented to him and had truly been paid.

7. The public interest is served by ensuring that such alleged conduct of Defendants is taken seriously by the judiciary.

Mortgage Note itself in support.  The Mortgage Note stated:[2/]

PERSONAL GUARANTEES

For any borrower that is a trustee under a trust, that borrower not only obligates the trustee and the trust assets, but also individually and personally guarantees that if the trust or trustee do [sic] not pay the obligations under this Note, that that borrower will be personally responsible for those obligations.

Additionally, in his notice regarding the motion for summary judgement ("MSJ"), Drake reiterated his position that he was entitled to a deficiency judgment against the "Defendant Mortgagors."  In an accompanying declaration, Drake attached a host of documentary exhibits, enumerating and describing each. In that enumeration, Drake described "Exhibit K" as "the deed by which the Embernates as trustees transferred their interest in the property to themselves as tenants by the entirety, hence the reason for naming them individually in this lawsuit."  In an accompanying document entitled "Plaintiff's Statement of Undisputed Facts for Summary Judgment," Drake posited undisputed facts, provided the evidentiary basis for each undisputed fact, and asserted that "[t]he [Mortgage Note] was personally guaranteed by the Embernates."

The Embernates and Embernates-Trustees eventually distanced themselves from the Gaspars' money order defense, disclaiming any knowledge of the details of the purported payment and admitting that they were unable to verify its validity.  They proceeded to file an amended answer to the Complaint ("Amended Answer"), in which their defense appears to be premised on Drake's participation in the original venture and his alleged insistence that the Embernates be placed on title to the Property.  The Embernates and Embernates-Trustees prayed therein that "[Drake] not be allowed a deficiency judgment against [them individually, and as trustees, and] that the Complaint be dismissed against them . . . ."

Following a hearing, the Circuit Court granted the MSJ.

---

[2/]    The Mortgage Note previously had been entered into the record, following the Court's Preliminary Injunction Order, as part of Drake's declaration attesting to his personal assignment of the Mortgage.

E.    Findings of Fact/Conclusions of Law

Drake submitted his proposed findings of fact and conclusions of law ("Proposed FOF/COL") to the Circuit Court.  In relevant part, he proposed:

### FINDINGS OF FACT

. . . .

15.   The [Mortgage Note] was personally guaranteed by [the Embernates].

. . . .

### CONCLUSIONS OF LAW

. . . .

30.   If the proceeds of the sale and any rent proceeds are insufficient to satisfy the amounts owed on Drake's mortgage and a deficiency exists, a deficiency judgment shall be entered against defendant Mortgagors and defendants [Embernates] . . . .

. . . .

THEREFORE IT IS ORDERED, DECREED, AND ADJUDGED:

. . . .

47.   That if the proceeds of the sale shall be insufficient to pay the [moneys due Drake] and it shall appear that a deficiency exists, that [Drake] have judgment against Defendant Mortgagors and defendants [Embernates], jointly and severally, in an amount equal to the principal sum then due under the [Mortgage] Note, together with [other costs and fees] . . . .

The Embernates and Embernates-Trustees objected to these Proposed FOF/COL, contending that:

The [Proposed FOF/COL] at ¶ 15, it is attempted [sic] to address that the [Mortgage Note] was personally guaranteed by [the Embernates] and while [the Embernates and Embernates-Trustees as objectors] do not deny the truth of the statement being said, they do however object to the inclusion of the statement in the [Proposed FOF/COL], as [Drake] failed to assert such a "personal guaranteeing" claim against [the Embernates] in the pleading of his Complaint . . . and in doing so has waived the assertion of the claim now and at this time.

The Embernates added to this objection, claiming that Drake earlier had made clear his reason for naming the Embernates in the lawsuit:

[Drake] states . . . in his [declaration in support of the MSJ]:

K.   Deed Lot 37 #2: Attached as Exhibit K is the deed by which the [Embernates-Trustees] transferred their interest on the property to themselves as tenants by the entirety, **hence the**

7

> reason for naming them individually in this
> lawsuit. . . .
>
> And so, [Drake] has clearly pleaded the sole factor and
> reason for him naming [the Embernates] in this lawsuit . . . .

The Embernates further contended that:

> The [Proposed FOF/COL] at ¶ 30 and ¶ 47, attempts to
> assert that if a deficiency exists that a deficiency
> judgment be entered against [the Embernates], along with the
> Defendant Mortgagors, when in fact [Drake] failed to assert
> such a "personal guaranteeing" claim against [the
> Embernates] in the pleading of his Complaint . . . and in
> doing so waived the assertion of the claim now and at this
> time.

The Circuit Court, in its Judgment, while having
incorporated certain other unrelated objections made by the
Embernates, retained paragraphs 15, 30, and 47 of Drake's
Proposed FOF/COL verbatim in its own findings of fact and
conclusions of law ("Circuit Court's FOF/COL"). This appeal
followed.

II. STANDARD OF REVIEW

A Circuit Court's post-trial ruling on a motion to
amend the pleadings is reviewed for an abuse of discretion. *See*
*Kamaka v. Goodsill Anderson Quinn & Stifel*, 117 Hawai'i 92, 104,
176 P.3d 91, 103 (2008). Where, as here, the Circuit Court
constructively amends the pleadings by entering findings on
unpleaded issues, we likewise review for an abuse of discretion.
*See Galindo v. Stoody Co.*, 793 F.2d 1502, 1512 & n.8 (9th Cir.
1986).

III. DISCUSSION

The Embernates contend that it was error for the
Circuit Court to grant Drake relief on a non-pleaded claim. They
cite only to Hawai'i Rules of Civil Procedure ("HRCP") Rule 8(a)[8]

---

[8]    HRCP Rule 8(a) states:

> **Claims for Relief.** A pleading which sets forth a claim for
> relief, whether an original claim, counterclaim, cross-claim, or
> third-party claim, shall contain (1) a short and plain statement
> of the claim showing that the pleader is entitled to relief, and
> (2) a demand for judgment for the relief the pleader seeks. Relief
> in the alternative or of several different types may be demanded.

(2000) in support of their position that Drake is precluded from obtaining that relief. Drake, in response, argues that the Embernates' claim is not ripe for appeal and, alternatively, that the issue of the Embernates' liability for a deficiency judgment was tried by consent.

As to ripeness, Drake argues that until the Embernates' potential deficiency judgment becomes an actual deficiency judgment of a known amount, this court's review is premature. Drake, however, appears to overlook Hawaii Revised Statutes § 667-51, which provides, in relevant part:

> (a) . . . [T]he following orders entered in a foreclosure case shall be final and appealable:
>
> (1)     A judgment entered on a decree of foreclosure, and if the judgment incorporates an order of sale or an adjudication of a movant's right to a deficiency judgment, or both, then the order of sale or the adjudication of liability for the deficiency judgment also shall be deemed final and appealable[.]

HAW. REV. STAT. § 667-51 (Supp. 2012). The Embernates have appealed from the Circuit Court's judgment, which was "entered on a decree of foreclosure," and that judgment both "incorporated an order of sale" and "adjudicat[ed] [Drake's] right to a deficiency judgment." The appeal of the Judgment is therefore authorized by statute, and the issue of the Embernates' liability for a deficiency judgment is, accordingly, ripe for this court's review.

As to Drake's failure to pray for a deficiency judgment against the Embernates, we consider whether the Embernates' liability for a deficiency judgment was tried by consent. "Pursuant to HRCP Rule 15(b)[(1)], any party may move to amend its pleadings to conform to the evidence presented at trial, 'when issues not raised by the pleadings are tried by express or implied consent of the parties.'" *Cresencia v. Kim*, 10 Haw. App. 461, 477, 878 P.2d 725, 734 (1994) (brackets and footnote omitted) (quoting Haw. R. Civ. P. 15(b)).[9]

---

Haw. R. Civ. Proc. 8(a).

[9]     HRCP Rule 15(b)(1) provides:

> *For Issues Tried by Consent.* When issues not raised by the

Here, as Drake did not move to amend the pleadings but instead proposed that he receive relief via his Proposed FOF/COL, and the Circuit Court granted relief accordingly, we deem the Circuit Court as having treated the issue of the Embernates' liability for the deficiency judgment as impliedly tried by consent. *See Prieto v. Paul Revere Life Ins. Co.*, 354 F.3d 1005, 1012 (9th Cir. 2004) ("[A] district court may amend the pleadings merely by entering findings on the unpleaded issues." (alteration in original)).

Regarding implied consent:

As a general rule,

> . . . consent will be implied from the failure to object to the introduction of evidence relevant to the unpleaded issue.
>
> There are two known exceptions to the general rule. First, consent will not be implied if a party will be substantially prejudiced by the proposed amendment. Second,
>
> > when the evidence that is claimed to show that an issue was tried by consent is relevant to an issue already in the case, as well as to the one that is the subject matter of the amendment, and there was no indication at trial that the party who introduced the evidence was seeking to raise a new issue, the pleadings will not be deemed amended under the first portion of Rule 15(b). The reasoning behind this view is sound since if evidence is introduced to support basic issues that already have been pleaded, the opposing party may not be conscious of its relevance to issues not raised by the pleadings unless that fact is made clear.

*Kamaka*, 117 Hawai'i at 113, 176 P.3d at 112 (citations, brackets,

---

> pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

Haw. R. Civ. P. 15(b)(1).

While it is desirable to move to amend the pleadings where warranted, *see* Charles Alan Wright et al., *Federal Practice and Procedure* § 1493 (3d ed. 1998), such a motion is not required, for "as long as issues are tried by the express or implied consent of the parties to a lawsuit, the issues 'shall be treated as if raised in the pleadings.'" *Cresencia*, 10 Haw. App. at 478, 878 P.2d at 734 (quoting *Hamm v. Merrick*, 61 Haw. 470, 474, 605 P.2d 499, 502 (1980)); Wright et al., *supra*, § 1493 ("Rule 15(b)(2) [the federal counterpart to HRCP 15(b)(1)] does not require that a conforming amendment be made and there is no penalty for failing to do so.").

and internal quotation marks omitted).

Significantly, the Embernates did not object to Drake's assertion in his statement of undisputed facts, submitted in support of the MSJ, that the Embernates were personally liable under the terms of the Mortgage Note. That they later objected to inclusion of the assertion as a finding in the Circuit Court's FOF/COL indicates their recognition of its irrelevance to any of the specifically pleaded claims. *Cf. Reno v. Reno*, 884 So. 2d 462, 465 (Fla. Dist. Ct. App. 2004) ("However, 'in order to rely on questions and answers not objected to during trial as evidencing the opposing party's implied consent to try unpled issues, it must be shown that [such] questions and answers are irrelevant to any pled issues.'" (quoting *Bilow v. Benoit*, 519 So. 2d 1114, 1116 (Fla. Dist. Ct. App. 1988))).

Moreover, in their Amended Answer, the Embernates expressly prayed that the Circuit Court not permit a deficiency judgment against either themselves or their trustee alter egos. Given these circumstances, in the context of a foreclosure action where the Embernates-Trustees knew their liability as trustees was at issue and the Mortgage Note at least appears to bind them personally, the Circuit Court, absent prejudice, did not abuse its discretion in effectively amending the pleadings, *see Prieto*, 354 F.3d at 1012, thereby holding the Embernates personally liable.

We cannot conclude on this record, however, that there was no prejudice. Recognizing that all parties involved appeared pro se and that the purpose of Rule 15(b) is to decide cases on the merits rather than as a contest of pleading skill (or lack thereof), we are constrained to remand to the lower court to consider whether its FOF/COL, having, in effect, constructively amended the pleadings, substantially prejudiced the Embernates. *See Schefke v. Reliable Collection Agency, Ltd.*, 96 Hawai'i 408, 433, 32 P.3d 52, 77 (2001) (recognizing one of HRCP Rule 15(b)'s purposes as "promot[ing] the objective of deciding cases on their merits rather than in terms of the relative pleading skills of counsel" (quoting *Cresencia*, 10 Haw. App. at 477, 878 P.2d at 734)); *cf. Folk v. Home Mut. Ins. Co.*, 336 N.W.2d 265, 268 (Minn.

11

1983) (determining that a remand to the lower court such that it might entertain a motion to amend the pleadings would be "more conducive to justice" where, due to confusion created by the parties, the appellate court could not find that consent to try an unpleaded issue had been implied).

IV.   CONCLUSION

For the reasons expressed above, and without prejudice as to their correctness, we vacate paragraphs 15, 30, and 47 in the Findings of Fact, Conclusions of Law and Interlocutory Judgment of Foreclosure and Judgment for Specific Performance on Complaint Filed February 22, 2010, filed on October 20, 2010, as to the Embernates individually, and remand to the Circuit Court for proceedings consistent with this opinion.  We affirm in all other respects.

DATED:  Honolulu, Hawai'i, November 12, 2013.

On the briefs:

Franklin Paul Embernate and
Leilani Pauline Embernate,
Pro Se Defendants-Appellees/
Appellants/Cross-Appellants.

Douglas H. Drake,
Pro Se Plaintiff-Appellee/
Cross-Appellee

Chief Judge

Associate Judge

Associate Judge